UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

MICHELLE W.,[1]

        Plaintiff,

  v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:19-CV-01916-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Michelle W. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons set forth below, that decision is AFFIRMED.

Plaintiff originally filed for DIB on May 5, 2016, alleging disability beginning on June 19, 2013. Tr. 90. Her application was initially denied on September 7, 2016, and upon reconsideration on January 11, 2017. Tr. 126, 127. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on July 20, 2018. Tr. 35-83. After

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name.

receiving testimony from plaintiff and a vocational expert ("VE"), ALJ Mark Triplett issued a decision on November 30, 2018, finding plaintiff not disabled within the meaning of the Act. Tr. 13-29. The Appeals Council denied plaintiff's request for review on October 25, 2019. Tr. 1-3. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to

determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since June 13, 2013, the alleged onset date. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: multiple sclerosis, hearing loss, affective disorder, attention deficit disorder and/or attention deficit hyperactivity disorder, degenerative disc disease, and osteoarthritis. Tr. 16. The ALJ recognized other impairments in the record, i.e., gastrointestinal disorder and vision impairment, but concluded these conditions to be non-severe. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.* The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 416.967(b), except she can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can occasionally stoop, kneel, crouch, and crawl; cannot tolerate exposure to extreme heat, extreme cold, extreme humidity, or extreme wetness; cannot perform tasks requiring acute auditory discernment or detection of quiet sounds; cannot work in loud/noisy work environments; and can perform simple routine tasks. Tr. 19.

At step four, the ALJ found plaintiff unable to perform past relevant work. Tr. 27.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy, including office helper, ticket taker, and sales attendant. Tr. 28. Thus, the ALJ concluded plaintiff was not disabled. Tr. 29.

**DISCUSSION**

Plaintiff argues the ALJ erred by (1) rejecting Dr. Kresa-Reahl's opinion that her "severe fatigue" would cause excessive absenteeism, and (2) rejecting Dr. Samagh's opinion that her fatigue would cause her to be absent from work at least two days per month. Pl. Br. 8, 13.

**I.   Medical Opinion Evidence**

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as the reasons are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Here, plaintiff's treating physician's opinions were contradicted; therefore, the specific and legitimate standard applies.

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citation and internal quotation marks omitted). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

**A.   Kiren Kresa-Reahl, M.D.**

Dr. Kresa-Reahl, plaintiff's treating neurologist, stated in a January 5, 2018 note, "I suspect that if [plaintiff] were to try to go back to work, she would fail due to severe

fatigue causing mental slowness and absenteeism." Tr. 994. The ALJ gave Dr. Kresa-Reahl's opinion "little weight." Tr. 25.

1. **Subjective Complaints**

The ALJ discounted Dr. Kresa-Reahl's opinion because it was "overly reliant on the claimant's subject complaints that were brought up for the first time during this visit, namely worsening memory problems and severe fatigue." Tr. 25. As plaintiff correctly observes, this appears contrary to chart notes indicating that plaintiff had complained of fatigue in earlier visits with Dr. Kresa-Reahl.[2] *E.g.*, Tr. 598 ("Fatigue has been a problem for the last couple of years."), Tr. 647 (fatigue "waxes and wanes," "worse right now"), Tr. 667 ("Cognitively and from a fatigue perspective she struggles significantly."), Tr. 978 (fatigue "with good and bad days").

However, the ALJ also found "[t]here is no objective evidence supporting Dr. Kresa-Reahl's opinion." Tr. 25. The ALJ had otherwise discounted plaintiff's subjective symptom testimony, finding "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 20. Plaintiff does not challenge that finding. Where the ALJ had discounted plaintiff's subjective symptom testimony, the ALJ was "free to disregard" a doctor's opinion that was "premised on her subjective complaints." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Plaintiff contends that there is also objective evidence in the record, specifically the Modified Fatigue Impact Scale ("MFIS"), to support her complaints of fatigue. Plaintiff scored a

---

[2] Plaintiff's argument primarily focuses on fatigue. The ALJ elsewhere extensively rejected plaintiff's complaints regarding memory loss, which plaintiff does not challenge. Tr. 17.

5 – OPINION AND ORDER

57 on the MFIS On September 9, 2014, and a 57 on the MFIS on June 6, 2017, she scored 57. These scores indicate a "maximal" amount of fatigue. *See Monhart v. Comm'r of Soc. Sec.*, No. 1:17 CV 790, 2018 WL 3772732, at *3 (N.D. Ohio Aug. 9, 2018) (observing "anything over 57 indicating 'maximal amount of fatigue'"); *Davis v. Comm'r of Soc. Sec.*, No. 1:15 CV 2111, 2017 WL 395717, at *7 (N.D. Ohio Jan. 30, 2017) (observing MFIS score of 60 indicates "maximal" fatigue).

However, as the Commissioner correctly notes, the MFIS score is based on a patient's subjective responses. Def. Br. 4. According to the National MS Society, the MFIS is a five to ten minute test "derived from interviews with MS patients concerning how fatigue impacts their lives." https://www.nationalmssociety.org/For-Professionals/Researchers/Resources-for-MS-Researchers/Research-Tools/Clinical-Study-Measures/Modified-Fatigue-Impact-Scale-(MFIS) (last visited June 6, 2021). Specifically, patients are directed to rate their answers to 21 questions on a scale of 0 to 4 on 21, including questions such as "I have been less alert" and "I have had to pace myself in my physical activities." *See* https://nmsscdn.azureedge.net/ NationalMSSociety/media/MSNationalFiles/Brochures/MSQLI_-A-User-s-Manual.pdf (last visited June 6, 2021).

In sum, the ALJ's decision to give Dr. Kresa-Reahl's opinion less weight because it was based on plaintiff's subjective complaints is a specific and legitimate reason supported by substantial evidence.

2.  **Lack of Objective Medical Evidence**

The ALJ further discounted Dr. Kresa-Reahl's opinion because plaintiff's October 2017 MRIs did not show any "new or worsening lesions." *Id.* (citing Tr. 959-95); *see* Tr. 993 (October 2017 brain MRI review summary: "Overall similar size and distribution of

demyelinating lesions, without abnormal enhancement to indicate active disease."). Plaintiff argues that "the absence of worsening lesions says nothing meaningful about the progression of symptoms in long-term relapsing/remitting MS because symptoms commonly progress in long-term relapsing/remitting MS in the absence of new or worsening lesions," and that "the primary driver of increased symptoms in the type of MS is brain atrophy, which occurs independently of lesion growth." Pl. Br. 5.

But here, Dr. Kresa-Reahl observed that plaintiff's MRI showed no new lesions *and* that plaintiff "has no new or worsening symptoms from her MS, except for some cramping in her calfs [sic] about once a night." Tr. 620. Other records state that she had "no enhancing lesions" and a "stable" physical exam. Tr. 976. Yet other records indicate "no new lesions, enhancement, or restricted diffusion to suggest active demyelination," and "[s]table moderate burden of plaque without evidence of active demyelination nor any definite new lesions." Tr. 965-66. Thus, the ALJ provided a specific and legitimate reason, supported by substantial evidence, to give Dr. Kresa-Reahl's decision less weight on this basis.

        **3.**     **Volunteer Work and Travel**

The ALJ rejected Dr. Kresa-Reahl's opinion because "the claimant testified to ongoing volunteer work, as well as flying out to visit her son once or twice a year." Tr. 26-27.

An ALJ may reject a medical opinion that is inconsistent with a claimant's activities. *See Morgan*, 169 F.3d at 601-02. However, similar to home activities, volunteer work "may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *See Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996) (citation omitted).

Indeed, although plaintiff testified that she did volunteer work "along the lines of writing and making posters" for different organizations, she said that she "liked doing it because there may not be the [same] pressure as a . . . quote/unquote job"; she volunteers "[d]aily, but on some days it's . . . a few hours[, a]nd then there's days when I don't . . . because I just can't"; and the work "appeals to me" because "I can just go and remove myself[, a]nd I can have my daily naps without feeling like I'm on a judgement platform." *See* Tr. 55-56, 61-64. It was improper for the ALJ to discount Dr. Kresa-Reahl's opinion based on plaintiff's volunteer work. *See Moon v. Colvin*, 139 F. Supp. 3d 1211, 1221 (D. Or. 2015) (concluding that the plaintiff's volunteer work did not provide a clear and convincing reason to reject her testimony where the plaintiff's testimony that "she is able to work as a volunteer for Free Geek for 3.5 hours per day, three days per week" and "that she has attempted to work full days as a volunteer, but found that doing so resulted in exacerbation of her symptoms . . . consistent with her testimony that she is unable to function outside of her home for more than four hours at a time").

Additionally, air travel alone is not evidence of a disability. *Hostrawser v. Astrue*, 364 F. App'x 373, 378 (9th Cir. 2010) (noting that the ability to travel does not necessarily indicate the ability "to undertake the physical functions" required by sustained work); *Moghadam v. Colvin*, No. C15-2009-TSZ-JPD, 2016 WL 7664487, at *8 (W.D. Wash. Dec. 21, 2016), *report and recommendation adopted*, No. C15-2009-TSZ, 2017 WL 68439 (W.D. Wash. Jan. 6, 2017) (concluding that "without more, plaintiff's 2011 and 2012 trips to Iran were [in]sufficient to counter the 2013 opinion of his treating doctor regarding his sit/stand/walk limitations and ability to work"); *cf. Tommasetti*, 533 F.3d at 1040 (holding that "[t]he ALJ could properly infer . . . that Tommasetti was not as physically limited as he purported to be . . . based on his ability to travel to Venezuela for an extended time *to care for an ailing sister*") (emphasis added).

At the hearing, plaintiff testified that she flies on her own to Canada "maybe once or twice a year" to visit her son and can "get around okay" when she is there because it is a familiar place, but that when she "come[s] back, [she'll] be down for a day or two after that." Tr. 51, 61. Plaintiff's husband confirmed, "throw in a trip to visit her son or something out of routine, and that will often put her out." Tr. 300. This does not evince an ability to work. Thus, the ALJ erred in this respect as well.[3]

Nevertheless, the ALJ otherwise rejected Dr. Kresa-Reahl's opinion with valid, specific and legitimate reasons based on substantial evidence. Any error is harmless. *See Brendan J.G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-742-SI, 2018 WL 3090200, at *10 (D. Or. June 20, 2018) ("[B]ecause the ALJ gave at least one specific and legitimate reason for discounting Dr. Richardson's opinion, the Court upholds the decision to do so."); *Hoge v. Berryhill*, No. 16-cv-00718-AC, 2017 WL 4881586, at *9 (D. Or. Oct. 27, 2017) ("[B]ecause the ALJ provided at least one specific and legitimate reason, supported by the evidence, to accord little weight to Dr. Freed's medical opinion, the ALJ did not err in doing so.").

## B. Gunjeet Samagh, M.D.

Dr. Samagh, plaintiff's long-time primary care provider, stated in a July 13, 2018 letter:

In any full-time occupation, I anticipate that [plaintiff] would struggle to be reliable. Due to the physical limitations due to multiple sclerosis, she is limited to sedentary work, meaning a maximum of standing and walking of two hours in a day. I also expect that due to her variable functioning, particularly as it relates to fatigue and waxing and waning depression, I anticipate she would miss work at least twice a month, on average. Additionally, she is limited to simple work due to her ADHD, difficulties with memory and depression symptoms.

---

[3] Plaintiff also challenges the ALJ's rejection of Dr. Kresa-Reahl's opinion because she "did not offer an opinion on the claimant's specific abilities regarding basic work functions or the extent of her absenteeism." Tr. 25. This argument may have merit. *See Clester v. Comm'r of Soc. Sec.*, No. CV-09-765-ST, 2010 WL 3463090, at *8 (D. Or. Aug. 3, 2010), *report and recommendation adopted,* 2010 WL 3463078 (D. Or. Aug. 31, 2010). Nevertheless, it is unnecessary to reach this issue.

Tr. 1076. The ALJ "accord[ed] limited weight to this opinion" but accepted Dr. Samagh's opinion regarding "simple work." Tr. 25

### 1. Not a Specialist/Subjective Complaints

The ALJ found that "Dr. Samagh is a primary care provider, not a neurologist and not a source treating the claimant's multiple sclerosis." *Id.* An ALJ should "generally give more weight to the opinion of a specialist about medical issues related to his or her area of expertise than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

Indeed, some of Dr. Samagh's opinion pertains to multiple sclerosis, and there is no evidence in the record that Dr. Samagh can opine as to those issues, such as, for example, when she found, "[d]ue to the physical limitations due to multiple sclerosis, [plaintiff] is limited to sedentary work, meaning a maximum of standing and walking of two hours in a day." Tr. 1076.

Dr. Samagh provided some opinions that fall within her treatment as a primary care provider. *See Faigen v. Astrue*, No. 3:11-CV-00219-JE, 2012 WL 2813971, at *12 (D. Or. June 7, 2012), *report and recommendation adopted*, 2012 WL 2813882 (D. Or. July 10, 2012) (concluding that the ALJ erred in rejecting a physician's opinion on the basis that "Dr. Trochmann opined as to mental issues outside the scope of her expertise" because "she did not opine as to impairments that were outside of her expertise"). Dr. Samagh opined that plaintiff's "primary limitations *secondary to MS* are fatigue, pain and memory issues." Tr. 1076 (emphasis added). The doctor opined that that "due to [plaintiff's] variable functioning, particularly as it relates to fatigue and waxing and waning depression, I anticipate she would miss work at least twice a month, on average." Tr. 1076. While Dr. Samagh could not opine as to plaintiff's multiple sclerosis, i.e., the source of plaintiff's fatigue, as a primary care physician who treated

plaintiff for many years, she could provide an opinion about the extent of plaintiff's fatigue based on her observations of plaintiff.

However, the ALJ found that Dr. Samagh's opinion was "poorly supported by explanation or reference to his treatment notes, and inconsistent with the record as a whole." Tr. 25. A discrepancy between a physician's opinion and that physician's own notes is a specific and legitimate reason to reject a doctor's opinion. *See Bayliss*, 427 F.3d at 1216. (discrepancy between a doctor's chart notes, recorded observations, and opinions, and an assessment of a claimant's abilities, is a clear and convincing reason to reject the doctor's assessment).

While Dr. Samagh's treatment notes describe fatigue (*see* Tr. 715 ("fatigue"), Tr. 723 (several days of feeling tired or having little energy), Tr. 1003 ("Feeling tired or having little energy?: Nearly every day."); Tr. 1008 ("lots of fatigue")), the ALJ reasonably concluded that Dr. Samagh's treatment notes do not support her opinion that plaintiff would have to miss two days of work per month. *See Crosby v. Comm'r*, 489 F. App'x 166, 168-69 (9th Cir. 2012) (finding that a physician's opinion that was inconsistent with his treatment notes, which indicated claimant improved with treatment, was a specific and legitimate basis to discount physician's opinion); *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1214-15 (D. Or. 2019) (holding that the ALJ properly rejected a physician's opinion "because the 'extreme limitations' she assessed were inconsistent with her own treatment notes showing Plaintiff 'had no spinal tenderness, normal musculoskeletal range of motion, no joint swelling or tenderness, and normal gait'"); *Curtis v. Berryhill*, No. 3: 16-CV-01952-PK, 2018 WL 3148244, at *6 (D. Or. Feb. 5, 2018), *report and recommendation adopted*, No. 3:16-CV-1952-PK, 2018 WL 1535479 (D. Or. Mar. 29, 2018) (concluding that the ALJ properly rejected a physician's opinion as "inconsistent

with his own treatment notes, which stated [the plaintiff] 'had mostly normal findings on physical examinations with only occasional tenderness and full muscle strength,' and that [the plaintiff]'had a very good response to his bilateral hip surgery with normal reflexes on examination'") (alteration omitted). Although plaintiff argues for a different interpretation of Dr. Samagh's record, this court is required to uphold the ALJ's determination if it is a reasonable interpretation of the record. *See Rollins*, 261 F.3d at 857.

Moreover, Dr. Samagh's chart notes describe fatigue as plaintiff reported it. As discussed above, the ALJ did not find that plaintiff's fatigue was as debilitating as she claimed. Again, where the ALJ discounted plaintiff's subjective symptom testimony, the ALJ is "free to disregard" a doctor's opinion that is "premised on her subjective complaints." *Tonapetyan*, 242 F.3d at 1149.

### 2. Activities

Finally, the ALJ rejected Dr. Samagh's opinion because "[t]his severe level of limitations [is] not consistent with the claimant's reported functioning—such as traveling by plane and engaging in volunteer work" *Id.* These were not valid reasons, as discussed above.

Nevertheless, because the ALJ provided at least one specific and legitimate reason, supported by substantial evidence, to reject Dr. Samagh's opinion, any invalid reasons the ALJ replied upon in error are harmless.

//
//
//
//
//

**ORDER**

The Commissioner's decision is AFFIRMED.

It is so ordered.

DATED June 7, 2021.

                                                        /s/ Youlee Yim You
                                        Youlee Yim You
                                        United States Magistrate Judge